UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


LUCAS C. WYNN,

        Plaintiff,                      Civil No. 05-2212 (PAM/JJG)

v.

M. CONNOR, Warden FERRIES,          **REPORT AND**
Sgt. CORTEZ, DAYTON BURKHOLDER,    **RECOMMENDATION**
M.D., and CORRECTIONAL MEDICAL
SERVICES,

        Defendants.



      Lucas C. Wynn, Minnesota Correctional Facility - Oak Park Heights, 5329 Osgood Avenue North, Stillwater, Minnesota, 55082-1117, Plaintiff, pro se.

      Jeremy J. Sundheim, Geraghty, O=Loughlin & Kenney, P.A., 386 North Wabasha Street, Suite 1400 Ecolab University Center, St. Paul, Minnesota, 55102-1308, for Defendants Dayton Burkholder, M.D. and Correctional Medical Services.

      Tricia L. Matzek, Assistant Minnesota Attorney General, Suite 900, 445 Minnesota Street, St. Paul, Minnesota, 55101-2127, for Defendants M. Connor, D. Ferrise, and Reinaldo Cortes.


JEANNE J. GRAHAM, United States Magistrate Judge

      Plaintiff, a Minnesota state prison inmate, is seeking relief under 42 U.S.C. ' 1983, for

alleged violations of his federal constitutional rights.  In Plaintiff=s Second Amended Complaint,

(which is the operative pleading in this matter), he claims that Defendants did not provide him

with proper medical care and treatment while he was confined at the Minnesota Correctional

Facility at Stillwater, Minnesota, (AMCF-STW@).

Three of the named Defendants in this action, who are (or were) employed by the Minnesota Department of Corrections B M. Connor, D. Ferrise, and Reinaldo Cortes B have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Docket No. 58.) Defendant Correctional Medical Services has filed a separate motion for summary judgment, and Defendant Dayton Burkholder, M.D., has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dockets No. 69 and 48.) Defendants=three dispositive motions have been fully briefed, and the matter has been referred to this Court for a report and recommendation under 28 U.S.C. ' 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that all of Defendants= motions be granted, and that this action be dismissed without prejudice.

## I. FACTUAL BACKGROUND

According to a website maintained by the Minnesota Department of Corrections, (ADOC@), Plaintiff has been a prisoner of the State of Minnesota since November 2004. Defendants have submitted DOC medical records, which show that Plaintiff has been diabetic since at least 2000. (Affidavit of Maureen Connor, [Docket No. 66], [hereafter AConnor Aff.@], p. 2, & 5.) On January 3, 2005, Plaintiff was confined at the Minnesota Correctional Facility in St. Cloud, Minnesota. A DOC medical record from that date indicates that he was Anot doing real well.@ (Connor Aff., Exhibit F.) His Ablood sugars@ were Aelevated,@ his weight was Agoing up,@ (and had already reached 290 pounds), his diabetes was Anot well controlled,@ and he needed Aa refresher@ on how to control his diabetes. (Id.) A few days later, however, Plaintiff was transferred to MCF-STW. (Second Amended Complaint, [Docket No. 29], p. 3, & 6.)

After Plaintiff arrived at MCF-STW, his diabetes treatment was overseen by Defendant

2

Dayton Burkholder, M.D.  Plaintiff alleges that Defendant Burkholder Awas the Medical Doctor

at MCF-Stillwater@ at all times relevant to this action.  Dr. Burkholder apparently was employed

by Defendant Correctional Medical Services, (ACMS@), a corporation that has entered into a

contract with the DOC Ato provide physician and nurse practitioner services to Minnesota=s

prisons.@ (Affidavit of Dale Poliak, [Docket No. 72], p. 1, &s 3, 4.)[1]

Dr. Burkholder repeatedly advised Plaintiff to Alose weight and exercise.@ (Connor Aff.,

Exhibit F.)  Plaintiff=s Second Amended Complaint, (p. 3, & 9), suggests that Dr. Burkholder

reduced Plaintiff=s insulin dosage without any input from Plaintiff himself.  However, according

to a medical record dated March 15, 2005, Plaintiff purportedly told Dr. Burkholder he Awould

like to reduce his insulin further.@ (Connor Aff., Exhibit F.)  In any event, as of May 2005,

Plaintiff was no longer receiving insulin on a regular basis.  (Second Amended Complaint,

p. 3, & 9; Connor Aff., p. 4, & 16, Exhibit F.)

On May 19, 2005, Plaintiff was assigned to the segregation unit at MCF-STW, and he

remained there until October 12, 2005.  (Second Amended Complaint, p. 3, & 10.)  During that

time, Plaintiff raised several concerns about the treatment of his diabetes.  Some of Plaintiff=s

concerns were presented to Defendant Maureen Connor, the Health Service Administrator at

MCF-STW.  On other occasions, Plaintiff presented his concerns to Defendant Reinaldo

Cortes, a correctional officer who worked in the segregation unit at MCF-STW.  Plaintiff was

primarily concerned about his diet, the monitoring of his glucose level, the availability of

---

[1] The present record does not fully explain Dr. Burkholder=s employment status, but that issue need not be resolved, because his actual legal relationship to CMS and the DOC is wholly irrelevant to the Court=s analysis of the currently pending motions.

special foods and glucose supplements, and the availability of medical care for his diabetes. (Second Amended Complaint, pp. 4-6, &s 11- 28.)

Plaintiff=s insulin treatments were resumed in June 2005, apparently against his wishes. (Connor Aff., p. 4, &s 17, 18, Exhibit E.)  During the remainder of Plaintiff=s confinement in the segregation unit, he repeatedly expressed concern about his glucose level and insulin dosage.

Plaintiff sometimes expressed his concerns about his medical care verbally, and sometimes by way of informal prison complaint forms known as Akites.@ (Connor Aff., Exhibit E.)  The record shows that Plaintiff received a response to most of the medical care concerns that he raised while he was in segregation, (Connor Aff., pp. 4-6, &s 20-24), but he claims that those responses were inadequate.

Plaintiff further claims that on some occasions his requests for medical care were not addressed at all.  On one occasion, a nurse allegedly told a correctional officer named Enerson that Plaintiff should be given something to eat, but that directive was not followed. (Second Amended Complaint, p. 6, & 26.)  A similar incident allegedly occurred a few weeks later, this time involving an officer named Arnett.  (Id., & 27.)  Plaintiff also alleges that a correctional officer named Larson once made him wait for an hour and a half for treatment that he needed for hypoglycemia.  (Id., p. 5, & 19.)  The Second Amended Complaint describes several other similar incidents that allegedly occurred while Plaintiff was in segregated confinement during the summer of 2005.  (Id., pp. 5-6, &s 20-22.)

Plaintiff obviously believes that he did not receive proper medical care while he was in the segregated confinement unit at MCF-STW, but he has not described any specific harm to his health.  Despite the apparent absence of any actual injury to Plaintiff=s health, he is now

4

attempting to sue three DOC officials, (Warden Ferrise, Health Service Administrator Connor, and Sergeant Cortez), as well as Dr. Burkholder, and CMS, for "general, speculative, nominal, compensatory, consequential, punitive, and treble damages." (Complaint, p. 7, ' V.)

Plaintiff's pleading does not describe any specific legal basis for his lawsuit, but the caption of the Second Amended Complaint refers to 42 U.S.C. ' 1983, and it clearly appears that Plaintiff is claiming Defendants violated his constitutional rights under the Eighth Amendment, by deliberately disregarding his serious medical needs.  See Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) ("[i]t has long been established that prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment when the officials are deliberately indifferent to the prisoner's serious medical needs"), (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Mays v. Rhodes, 255 F.3d 644, 649 (8th Cir. 2001) ("[d]eliberate indifference requires proof that [the prisoner-plaintiff] suffered objectively serious medical needs and that the [defendants] actually knew of these needs but deliberately disregarded them").

All five of the named Defendants contend that Plaintiff's ' 1983 claims cannot be addressed on the merits, and that this action must be summarily dismissed, because Plaintiff did not exhaust all of his available administrative remedies before commencing this action. The Court agrees.

## II. STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986);  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also

Unigroup, Inc. v. O-Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1992).

"[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut,

but rather as an integral part of the Federal Rules as a whole, which are designed to secure

the just, speedy, and inexpensive determination of every action."  Celotex, 477 U.S. at 327.

A Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.@  DePugh v. Smith, 880 F. Supp. 651, 656

(N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material

facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of

St. Paul, Dep't of Fire & Safety Services, 224 F.3d 735, 738 (8th Cir. 2000).  If the moving

party has carried its burden, the non-moving party must demonstrate the existence of specific

evidence in the record that creates a genuine issue of material fact.  Anderson, 477 U.S. at

256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).  A The nonmoving party

may not rest on mere allegations or denials, but must show through the presentation of

admissible evidence that specific facts exist creating a genuine issue for trial.@  Minnesota

Laborers Health & Welfare Fund v. Swenke, Civ. No. 02-992 (RHK/AJB) (D. Minn. 2003),

2003 WL 21521755 at *1 (citations omitted).  The non-moving party A must substantiate his

allegations with sufficient probative evidence [that] would permit a finding in [his] favor based

on more than mere speculation, conjecture, or fantasy.@  Wilson v. International Business

Machines Corp., 62 F.3d 237, 241 (8th Cir. 1995), (quoting Moody v. St. Charles County,

23 F.3d 1410, 1412 (8th Cir. 1994).  If the evidence is A merely colorable or is not significantly

probative, summary judgment may be granted.@ <u>Anderson</u>, 477 U.S. at 249-50.

In this case, one of the Defendants, Dr. Burkholder, has not filed a motion for summary judgment, but has instead filed a motion to dismiss for failure to state a claim on which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). That particular motion cannot be granted as such, because the recommended disposition of this matter is based on evidence beyond that which is pleaded in Plaintiff=s complaint. However, the Court=s analysis of the other pending motions, (i.e., the motions for summary judgment), is fully applicable to Plaintiff=s claims against Dr. Burkholder. Furthermore, Plaintiff has had a full and unfettered opportunity to respond to the pending summary judgment motions, and he has, in fact, filed his opposition to those motions. Under these circumstances, summary judgment can properly be granted, <u>sua</u> <u>sponte</u>, in favor of Dr. Burkholder, as well as the other moving Defendants. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 326 (Adistrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence@); <u>Jones v. Union Pacific R. Co.</u>, 302 F.3d 735, 740 (7th Cir. 2002) (A[w]hen there are no issues of material fact in dispute, a district judge may... enter summary judgment <u>sua</u> <u>sponte</u>, as long as the losing party is given notice and an opportunity to come forward with its evidence@); <u>Smith v. DeBartoli</u>, 769 F.2d 451, 452 (7th Cir. 1985) (Aa district court may grant summary judgment for a party without a motion, when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond@), <u>cert</u>. <u>denied</u>, 475 U.S. 1067 (1986).

## III.  DISCUSSION

A.  The Exhaustion Of Administrative Remedies Requirement

42 U.S.C. ' 1997e(a) provides that B

ANo action shall be brought with respect to prison conditions under [42 U.S.C. ' 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.@

Congress enacted this statute as part of the Prison Litigation Reform Act of 1995, (APLRA@), which was intended to Areduce the quantity and improve the quality of prisoner suits.@ Porter v. Nussle, 534 U.S. 516, 524 (2002).  The PLRA initiated Aa variety of reforms designed to filter out the bad claims and facilitate consideration of the good.@ Jones v. Bock, 127 S.Ct. 910, 914 (2007).  One of those reforms is the exhaustion of administrative remedies requirement prescribed by ' 1997e(a).

Our Court of Appeals has identified at least four valuable objectives that are promoted by an exhaustion of administrative remedies requirement.  First, exhaustion of administrative remedies helps to ensure a more complete development of the factual record before a claim is brought into court.  Second, it gives the court the benefit of whatever special knowledge and experience the administrative agency might have to offer.   Third, it acknowledges the autonomy and authority of administrative agencies.  Finally, to the extent that claims can be resolved at the administrative level, an exhaustion requirement promotes judicial economy. Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976).

As the Court of Appeals explained in Johnson v. Jones, 340 F.3d 624 (8th Cir. 2003), by enacting ' 1997e(a) B

8

@Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.   And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.@

Id. at 626-27, citing Porter, 534 U.S. at 524-25.  See also Woodford v. Ngo, 126 S.Ct. 2378, 2385, 2387-88 (2006) (discussing the purposes and benefits of the ' 1997e(a) exhaustion of administrative remedies requirement).

In Booth v. Churner, 532 U.S. 731 (2001), the United States Supreme Court held that a prisoner must exhaust all of his administrative remedies before filing suit in federal court, even if the specific relief that he is seeking is not directly available by means of the administrative remedy process.  According to Booth, @Congress has provided in ' 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.@ Id. at 741, n. 6.  In other words, even if a prisoner is seeking only money damages, and such relief cannot be awarded under the applicable administrative remedies, the prisoner still must fully prosecute his claims through all available administrative channels before he can bring them into federal court.[2]

---

[2]   The Supreme Court also stated in Booth that @[t]he >available remed[y]= must be >exhausted=before a complaint under ' 1983 may be entertained.@ Id. at 738 (alterations in the original; emphasis added).  This ruling has caused the Eighth Circuit Court of Appeals to conclude that a prisoner civil rights action must be summarily dismissed, i f the prisoner-plaintiff did not fully exhaust all available administrative remedies before the action was commenced. Johnson, 340 F.3d at 627.  Even if the prisoner satisfies the exhaustion requirement while his lawsuit is still pending, the court still must dismiss any claims that were not fully exhausted as of the date when the lawsuit was filed.  Id. at 627-28.  The Court of Appeals has explained this rule as follows:

B.  Plaintiff=s Administrative Remedies

The Minnesota DOC has adopted a formal AGrievance Procedure,@ which prescribes a set of administrative remedies that are available to Minnesota state prison inmates.  A copy of the Grievance Procedure is attached to the Affidavit of Kim Ebeling, (Docket No. 61], [AEbeling Aff.@]), as AExhibit A.@ The purpose of the Grievance Procedure is simple and broad B ATo provide a process for conflict resolution for offenders.@ (Id., p. 1.)

The DOC Grievance Procedure prescribes a three-step process.  Inmates must first seek to resolve their grievances informally, by sending a Akite,@ (i.e., a short written note), to a pertinent prison staff member.  (Id.)  If the kite does not resolve the grievance to the inmate=s satisfaction, then the inmate must prepare and submit a formal AOffender Grievance form.@ (Id., p. 2.)  The formal grievance is investigated by a Afacility grievance coordinator,@ who submits the results of his or her investigation to the prison warden (or designee).  The warden (or designee) then rules on the grievance, and gives notice of that ruling to the inmate.  (Id.)

If the inmate is dissatisfied with the decision of the warden (or designee), he can appeal that decision, by submitting a formal Grievance Appeal form to the DOC=s Acentral office grievance appeal coordinator.@ (Id., p. 3.)  That person will A[d]etermine the appropriate method of investigating the grievance and submit the investigation results with recommendation to the appropriate assistant or deputy commissioner.@ (Id.)  The assistant or

---

A[I]n considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred.  If exhaustion was not completed at the time of filing, dismissal is mandatory.@

Id. at 627.

deputy commissioner then makes a final decision on the grievance.  (Id., p. 4.)

Under certain circumstances involving threats to the physical safety of an inmate, he can proceed directly to the final step of the administrative process, and submit his grievance directly to the central office grievance coordinator.  (Id., p. 3.)  However, the Grievance Procedure is always completed when B and only when B there has been a final decision from the assistant or deputy commissioner.  Thus, the administrative remedies provided by the DOC are fully exhausted, for purposes of ' 1997e(a), only when an inmate completes all of the prescribed steps of the DOC Grievance Procedure, and receives a final decision from the assistant or deputy commissioner.

C. Plaintiff=s Failure To Exhaust Administrative Remedies

In this case, Plaintiff filed several informal Akites@ pertaining to his concerns about his medical treatment while he was in the segregation unit at MCF-STW.  (Connor Aff., Exhibits A-E.)  He has also filed a total of eight formal grievances.  (Ebeling Aff., p. 1, & 3.)  However, only three of Plaintiff=s grievances pertained to medical matters, and none of those three grievances pertained to any of the matters described in Plaintiff=s Second Amended Complaint.  (Id.)[3]  Thus, the record shows that Plaintiff has not exhausted his available administrative remedies for any of the claims presented here.

The fact that Plaintiff filed several formal grievances shows that he was fully aware of the DOC Grievance Procedure.  Furthermore, Plaintiff has candidly acknowledged, on the face

---

[3]   The Affidavit of Kim Ebeling indicates that AAll three of the grievances related to medical issues are actually regarding what [Plaintiff] alleges to be the improper assessment of a co-pay for medical treatment provided by the facility.@ (Ebeling Aff., pp. 2-3, & 3.)

of his Second Amended Complaint:   AThere is a prisoner grievance procedure in the institution,A and AI did not present the facts relating to my complaint in the prisoner grievance procedure.@ (Second Amended Complaint, p. 2, ' II., [emphasis added].) Thus, it could not be more clear that Plaintiff was aware of the administrative remedy process, and that he did not exhaust his administrative remedies for any of his current claims for relief before he commenced his present lawsuit.  Plaintiff has not attempted to excuse his failure to exhaust his available remedies, and no possible excuse is suggested by anything in the record in this case.  The Court therefore finds, as a matter of law, that Plaintiff failed to satisfy the exhaustion of administrative remedies requirement prescribed by 42 U.S.C. ' 1997e(a).

## IV.  CONCLUSION

The Supreme Court has recently reiterated that A[t]here is no question that exhaustion [of administrative remedies] is mandatory under the PLRA and that unexhausted claims cannot be brought in court.@ Jones, 127 S.Ct. at 918-19.  See also Woodford, 126 S.Ct. at 2382 (A[e]xhaustion is no longer left to the discretion of the district court, but is mandatory@).  Our Court of Appeals has likewise made it clear that if a prisoner does not exhaust his administrative remedies before filing a complaint in federal court, Adismissal is mandatory.@ Johnson, 340 F.3d at 627.   Even if a prisoner subsequently satisfies the exhaustion requirement while his action is still pending, the case still must be dismissed.  Id.[4]

---

[4]  In light of Johnson=s explicit instruction that district courts are to Alook to the time of filing@ of the complaint Ato determine if exhaustion has occurred,@ it is neither necessary nor appropriate to consider whether Plaintiff may have exhausted his administrative remedies as to any of his current claims for relief at some time after he filed this action.  It is worth noting, however, that Plaintiff has made no effort to show that he exhausted his administrative remedies after this action was commenced.  Furthermore, it may now be too late for him to

Here, Plaintiff has candidly acknowledged, (and the record clearly confirms), that he did not initiate the DOC administrative remedy process for any of his current claims before he commenced this action.  Therefore, this action must be dismissed in its entirety.  See Marlin v. Marquez, 218 Fed.Appx. 545 (8th Cir.) (unpublished opinion) (dismissal of prisoner=s civil rights claims was Amandatory,@ because he failed to complete all of the necessary steps of the administrative remedy process before filing his complaint), cert. denied, 2007 WL 2591121 (Nov. 13, 2007); see also Mullins v. Salazar, Civil No. 04-5050 (PAM/FLN), (D.Minn. 2006), 2006 WL 2685097 at *5 (Minnesota state prisoner=s claims dismissed, because he did not completely exhaust the administrative remedies provided by the DOC Grievance Procedure).

When a case is dismissed pursuant to ' 1997e(a), because of the plaintiff=s failure to exhaust his administrative remedies, it must be dismissed without prejudice.  See  Harris v. Kemna, 155 Fed.Appx. 941 (8th Cir. 2005) (unpublished opinion); Nash v. Lappin, 172 Fed.Appx. 702, 703 (8th Cir. 2006) (unpublished opinion).  Therefore, the Court will recommend that Defendants= motions for summary judgment be granted, and that this action be dismissed, without prejudice.[5]

---

pursue the DOC Grievance Procedure for his current claims for relief.  If that is the case, then those claims may not be just Aunexhausted,@ but rather, they may be, in effect, Aprocedurally defaulted,@ which would mean that Plaintiff is barred from ever bringing those claims into federal court.  See Woodford, 126 S.Ct. at 2386-87.  That issue, however, is not before the Court at this time.

[5]  Although the dismissal of this action will not automatically preclude Plaintiff from commencing another lawsuit, (if he can, and does, hereafter satisfy the exhaustion of administrative remedies requirement), it appears doubtful that his current ' 1983 claims could ever be successful.  Defendants have addressed the merits of Plaintiff=s Eighth Amendment claims, (as an alternative defense), and based on their submissions, it appears unlikely that Plaintiff could ever prevail on those claims.  Defendants have presented evidence showing that

13

## VI.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendants= Motions For Summary Judgment, (Docket Nos. 58 and 69), be

GRANTED;

2. Defendant Dayton Burkholder be granted summary judgment on his motion to

dismiss, (Docket No. 48); and

---

they did not ignore Plaintiff=s diabetic condition while he was at MCF-STW.  Plaintiff obviously disagrees with the manner in which his medical needs were addressed, but such disagreements are common in a prison setting, and are not actionable under the Eighth Amendment.  Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990).  See also Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (Amere disagreement with treatment decisions does not rise to the level of a constitutional violation@), (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).  As the Court of Appeals explained in Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996):

> A[N]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment.  White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988).  Prisoners do not have a constitutional right to any particular type of treatment.  See id. at 327-28.  Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner=s requested course of treatment.  Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir. 1989); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994).@

Furthermore, a prisoner cannot sustain an Eighth Amendment claim, unless he can show that he suffered some Aactual injury.@  White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994) (A[w]hile a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation@).  Plaintiff=s current pleading does not identify any actual injury that could support an Eighth Amendment claim.

Because Defendants=failure-to-exhaust argument is found to be dispositive, their other arguments for dismissal are not adjudicated here.  However, in light of apposite Eighth Circuit case law, it appears that even if Plaintiff had exhausted his administrative remedies, his current Eighth Amendment claims probably would fail.

14

3.  This action be DISMISSED WITHOUT PREJUDICE.


Dated:  January 10, 2008                  s/ *Jeanne J. Graham*
                                          JEANNE J. GRAHAM
                                          United States Magistrate Judge



## NOTICE

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **January 25, 2008**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party=s right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. ' 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.